**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **KATHY J. MATSON and PAIGE E. DIXON,** ***individually and on behalf of all others similarly situated,*** | : | **CASE NO.______________** |
| ***Plaintiffs,*** | : | **JUDGE: __________________** |
| **v.** | : | **JURY DEMANDED** |
| **HOPEWELL GROVE REHABILITATION AND HEALTHCARE CENTER, LLC,** | : | |
| ***Defendant.*** | : | |

**COMPLAINT**

## I. INTRODUCTION

1. This is an action brought by Kathy J. Matson ("Named Plaintiff Matson") and Paige E. Dixon ("Named Plaintiff Dixon") (collectively, "Named Plaintiffs")) against Hopewell Grove Rehabilitation and Healthcare Center, LLC ("Defendant").

2. Named Plaintiffs brings their federal claims against Defendant in order to recover compensation, liquidated damages, attorneys' fees and costs, and other equitable relief pursuant to the Fair Labor Standard Act of 1939 ("FLSA"), as amended 29 U.S.C. § 201 et seq. Named Plaintiffs seek Court Supervised Notice pursuant to 29 U.S.C. § 216(b) to inform other similarly situated employees of their rights under the FLSA.

3. Named Plaintiffs brings their Ohio claims against Defendant in order to recover compensation, liquidated damages, attorneys' fees and costs, and other equitable relief pursuant to the Ohio Minimum Fair Wage Standards Act, O.R.C. §§ 4111 et. seq., (the "Ohio Wage

Act"), the Ohio Prompt Pay Act ("OPPA"), O.R.C. § 4113.15, 15 (the Ohio Wage Act and the OPPA will be collectively referred to as the "Ohio Acts") and O.R.C. § 2307.60. Named Plaintiffs bring their Ohio Acts and O.R.C. § 2307.60 on behalf of themselves and all similarly situated employee who joins this lawsuit from Ohio on an individual basis.

4. Named Plaintiff Matson brings individual Ohio state Whistleblower claims against Defendant in order to recover compensation, liquidated damages, and attorneys' fees and costs under O.R.C. § 3721.24(A) ("Ohio Whistleblower Claim").

5. Named Plaintiffs and those similarly situated are current and former employees of Defendant who did not receive one and a half times their regular rate for all hours worked over forty (40) in a workweek. (hereafter, "Putative Plaintiffs").

6. Under the FLSA and the Ohio Wage Acts, Defendant was required to pay for all hours Putative Plaintiffs worked and pay them 150% of their regular rate for all hours worked over 40 in a workweek. By willfully failing to compensate Named Plaintiffs and Putative Plaintiffs who performed work, i.e., patient care during their meal breaks and while on-call, Defendant violated the FLSA and the Ohio Acts.

## II. JURISDICTION AND VENUE

7. The jurisdiction of this Court is invoked pursuant to federal question jurisdiction under 28 U.S.C. § 1331, in that this case arises under a federal law of the United States.

8. This Court has supplemental jurisdiction over Named Plaintiffs' and the Putative Class Members' Ohio Acts claims pursuant to 28 U.S.C. § 1367 because these claims are so related to Named Plaintiffs' claims under the FLSA that they form part of the same controversy.

9. Venue in the Southern District of Ohio is proper pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to the claims herein occurred within this judicial district.

## III. THE PARTIES

10. Kathy J. Matson ("Ms. Matson") is an adult resident of Kingston, Ohio. Ms. Matson was employed by Defendant as an LPN Unit Manager[1] from approximately December 2024 until January 22, 2026. Her consent form is being filed along with this Complaint pursuant to 29 U.S.C. § 216(b) and is attached as **Exhibit A**.

11. Paige Dixon ("Ms. Dixon") is an adult resident of Wellston, Ohio. Ms. Dixon began her employment with Defendant as an LPN beginning in approximately December 2024 and remains employed as of the date of the filing of this Complaint. Her consent form is being filed along with this Complaint pursuant to 29 U.S.C. § 217(b) and is attached as **Exhibit B.**

12. The Putative Plaintiffs are all non-exempt employees employed by Defendant within three (3) years preceding the commencement of this action who were not paid overtime at a rate of 150% their respective regular rates for all hours worked over forty (40) in a workweek.

13. Defendant Hopewell Grove Rehabilitation and Healthcare Center, LLC is a limited liability company registered to do business in the state of Ohio. Process may be served upon its Registered Agent, Cogency Global, Inc. at 3958-D Brown Park Drive Hilliard, OH 43026.

## IV. FACUTAL ALLEGATIONS

14. During all times material to this Complaint, Defendant was an employer within the meaning of the FLSA, the Ohio Acts, and O.R.C. § 2307.60.

15. During all times material to this Complaint, Defendant employed Named Plaintiffs and the Putative Plaintiffs within the meaning of the FLSA and the Ohio Acts.

---

[1] Although Named Plaintiff Matson held the title of "manager," she was paid on an hourly basis rather than a salary basis and therefore did not satisfy the salary basis requirement necessary to qualify for the executive or administrative exemptions under the FLSA.

16. During all times material to this Complaint, Defendant was an enterprise engaged in commerce or in the production of goods for commerce within the meaning of Section 3(s)(1) of the FLSA, 29 U.S.C. § 203(s)(1), in that said enterprise has had employees engaged in commerce or in the production of goods for commerce, or has had employees handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce by any person, and in that said enterprise has had and has an annual gross volume of sales made or business done of not less than $500,000 per year (exclusive of excise taxes at the retail level).

17. During all times material to this Complaint, Named Plaintiffs and the Putative Plaintiffs have been Defendant's employees pursuant to the Ohio Acts and have been individual employees who were engaged in commerce or in the production of goods for commerce as required by 29 U.S.C. §§ 206-07.

18. During all times material to this Complaint, Defendant hired Named Plaintiffs and the Putative Plaintiffs.

19. During all times material to this Complaint, Named Plaintiffs and the Putative Plaintiffs were paid at an hourly rate, not on a salary or fee basis and thus were non-exempt employees entitled to be paid at least the minimum wage for all hours worked and overtime at 150% of their regular rate for all hours worked over forty (40) in a workweek.

20. Ms. Matson generally worked Monday through Friday, arriving between 6:00 a.m. and 8:00 a.m. Her departure time depended on issues that arose during the workday, but she typically worked approximately ten (10) to twelve (12) hours per day. In addition, she was required to remain on-call one (1) day a week, and for the entire day on Saturday and Sunday every four (4) to six (6) weeks.

21. Ms. Dixon typically works an alternating schedule. One week, she works twelve (12) or more hour shifts on Monday, Tuesday, Saturday, and Sunday from 6:00 a.m. to 6:30 p.m.

The following week, she works twelve (12) or more hour shifts on Wednesday and Friday. Due to call-offs and staffing shortages, Ms. Dixon often remains on duty beyond her scheduled shift, sometimes staying as late as 8:00 p.m. to 11:00 p.m.

22. During all times material to this Complaint, Named Plaintiffs and the Putative Plaintiffs regularly worked beyond forty (40) hours in a workweek.

23. During all times material to this Complaint, Defendant would record Named Plaintiffs and the Putative Plaintiffs' hours worked by use of a fingerprinting system, wherein Named Plaintiffs and the Putative Plaintiffs would have to manually clock themselves in to work and clock themselves out at the end of their respective shifts.

24. Per Defendant's website, Defendant serves Chillicothe and surrounding communities through specialized therapy services and rehabilitative care, offering both long-term care and short-term rehabilitation services.[2]

25. During all times material to this Complaint Named Plaintiffs' and the Putative Plaintiffs' duties include patient care related tasks, such as dressing, grooming, feeding, bathing clients, housekeeping, and other various day-to-day care activities that clients could not complete on their own.

26. During all times material to this Complaint, more than twenty (20) percent of Named Plaintiffs and the Putative Plaintiffs' job duties required care-related services.

**A. Defendant Failed to Compensate Plaintiffs for Work During Meal Periods and On-Call Time**

27. During all times material to this Complaint, Defendant maintained a policy and practice wherein thirty (30) minutes of time is deducted from Named Plaintiffs' and Putative Plaintiffs' shifts to account for an unpaid meal break.

[2] *See* https://www.hopewellgroverhc.com/about accessed on 02/24/2026

28. During all times material to this Complaint, Defendant automatically deducted this half hour of time to from shift regardless of whether or not a meal break was actually taken, or was a bona fide meal break pursuant to the FLSA and the Ohio Wage Laws.

29. During all times material to this Complaint, both the Defendant's work demands and Named Plaintiffs' and the Putative Plaintiffs' primary job duties often required them to work during or through their respective meal breaks to assist with patient care.

30. During all times material to this Complaint, Named Plaintiffs and Putative Plaintiffs were required to remain available to assist on the floor as issues arose. This included responding to a steady stream of patient needs, addressing concerns from family members, dealing with clinical issues such as difficulty starting IVs or changing wound dressings, troubleshooting computer problems, and handling complaints regarding patient care.

31. As a result, during all times material to this Complaint, Named Plaintiffs and the Putative Plaintiffs often worked through their auto-deducted thirty (30) minute meal break without pay.

32. During all times material to this Complaint and upon information and belief, Defendant was aware that Named Plaintiffs and the Putative Plaintiffs often worked during or through their unpaid thirty (30) minute meal break and permitted this to occur.

33. Indeed, upon information and belief, Named Plaintiff Matson previously emailed Defendant's Human Resources Representative, Matthew Stanley, advising that she had not received a meal break and requesting that the thirty (30) minutes not be deducted from her pay. In response, Mr. Stanley informed her that the Company automatically deducts the thirty (30) minute meal period regardless of whether it is actually taken, and that nothing could be done because the policy was mandated by corporate.

34. In addition, Named Plaintiff Matson[3] was required to remain on call for the entire day on Saturday and Sunday every four (4) to six (6) weeks. While on call, Named Plaintiff Matson was required to perform a variety of work-related duties, including assisting with patient admissions, responding to phone calls concerning operational and patient care issues such as shortages of adult diapers, providing support to aides who needed assistance, and addressing patients' wound care and infection control concerns.

35. However, because Named Plaintiff Matson was required to physically clock in using a fingerprint scan at Defendant's facility, and no alternative system existed to record her time while on call, she performed this work without compensation.

36. During all times material to this Complaint, when these thirty (30) minute meal deductions and time spent performing work while on call are added back into Named Plaintiffs' and the Putative Plaintiffs' hours worked, they go uncompensated for overtime hours worked in violation of the FSLA and Ohio Wage Acts.

**B. Defendant Failed to Include Non-Discretionary Bonuses and Shift Differentials in Plaintiffs' Regular Rate for Overtime Purposes**

37. Further, at all times material to this Complaint, and upon information and belief, Defendant paid Named Plaintiffs and the Putative Plaintiffs a non-discretionary attendance bonus if they had perfect attendance, picked up additional shifts, or stayed more than four (4) hours longer than their scheduled shifts.

38. These are non-discretionary bonuses that: 1) are set on a predetermined formula; 2) are paid as an inducement to work more efficiently, safely, and perform better; 3) compel

[3] Named Plaintiff Matson's on-call duties were unique to her position as the LPN manager. Although Ms. Dixon and other Putative Plaintiffs may not have been required to work on-call shifts, they were all subject to Defendants' practice of not compensating Plaintiffs for all hours worked.

better attendance; and 4) are made part of their compensation package such that Named Plaintiff and Putative Plaintiffs rely on bonuses as part of their compensation.

39. In addition, at all times material to this Complaint, and upon information and belief, when Named Plaintiffs and the Putative Plaintiffs worked a shift between 6:00 p.m. and 6:00 a.m., they received a $1.50 shift differential in addition to their respective hourly rates.

40. Defendant, based on its companywide policy, willfully failed to pay Named Plaintiffs, and, upon information and belief, Putative Plaintiffs, at a rate of 150% of their regular rate for all hours worked over forty (40) in a workweek in violation of the FLSA and the Ohio Wage Act by excluding non-discretionary bonuses and shift differentials when calculating Named Plaintiffs' and Putative Plaintiffs' regular rate. *See paystub of Named Plaintiff Matson* attached as **Exhibit C;** *see also Paystub of Named Plaintiff Dixon* attached as **Exhibit D.**

41. During all times material to this Complaint, Defendant's pay practice of not paying Named Plaintiffs and the Putative Plaintiffs for all hours worked, including all hours worked over forty (40) in a workweek at an amount equal to 150% of their *correct* regular rate, was willful and not in good faith.

42. During all times material to this Complaint, Defendant knowingly, willfully, or with reckless disregard carried out their illegal pattern or practice of failing to pay Named Plaintiffs and the Putative Plaintiffs for all hours worked, including all hours worked over forty (40) in a workweek at an amount equal to 150% of their regular rate.

### C. Defendant Retaliated Against Named Plaintiff Ms. Matson in Violation of Ohio Whistleblower Law.

43. On or about November 25, 2025, Named Plaintiff Matson reported to her supervisor and Regional Clinic Nurse, Jim Grey ("Mr. Grey"), that a patient with a wound

vacuum device had been neglected throughout the weekend. As a result of this neglect, the patient's wound became infected and worsened.

44. Upon information and belief, Mr. Grey failed to self-report the incident to his supervisor as required. When Mr. Grey's superior later learned of the situation, Mr. Grey was demoted from his position as Regional Clinic Nurse to Director of Facility.

45. On January 15, 2026, at approximately 3:30 p.m., on the day that he was scheduled to begin his new role, Mr. Grey called Ms. Matson and asked where medications were stored for a patient who was preparing to be discharged from the facility. Ms. Matson responded that she would be arriving at the facility at 5:00 p.m. and could address the matter then.

46. Ms. Matson instead arrived at the facility at approximately 4:30 p.m. and discovered that Mr. Grey[4] had broken into her office and medication cabinet, even though the facility physician had already provided the patient with a new prescription and resolved the issue.

47. Later that same day, immediately following the break-in to Ms. Matson's office and medication cabinet, Defendant placed Ms. Matson on an unpaid suspension and required her to submit to a drug test based on the condition of the medication cabinet after it had been accessed.

48. Although Ms. Matson passed the drug test, on January 22, 2026, Defendant nevertheless issued a write-up for improper storage of medications and terminated her employment.

49. Prior to her termination, on or about January 16, 2026, Named Plaintiff Matson reported Defendant to the State of Ohio Board of Health for safety and other regulatory violations.

---

[4] Upon information and belief, Mr. Grey admitted to Ms. Matson that he broke into the cabinet. This conversation took place when she was being terminated and in front of Defendant's administrator, Jeremy Long.

50. Specifically, Ms. Matson reported that: (1) Defendant had broken into medication cabinets and improperly handled medications; (2) Defendant had removed patients from the facility without ensuring they had an appropriate place to go; (3) approximately $48,000 in patient funds were missing; and (4) a patient had been left for several days without her wound vacuum properly attached, which caused the patient's wound to become infected and worsen.

51. Upon information and belief, on or about February 27, 2026, the State of Ohio Board of Health investigated Defendant's facility and issued five (5) F-Tag citations, also known as "Harm Tags," for the violations previously reported by Ms. Matson.

52. Upon information and belief, a Harm Tag citation in a nursing home—typically issued by a state surveyor acting on behalf of the Board of Health—indicates regulatory noncompliance that has caused actual harm to a resident due to the facility's failure to meet applicable federal standards of care.[5]

53. Upon information and belief, the five (5) Harm Tag citations issued to Defendant have resulted in Defendant being prohibited from accepting new patients and Medicare and Medicaid refusing to pay certain claims for at least one year.

54. Following the State Board's citations, Defendant began further retaliating against Ms. Matson for reporting the suspected neglect of a patient.

55. Upon information and belief, Defendant, and specifically supervisor Greg Njak, began threatening the employment of Putative Plaintiffs if they spoke with Ms. Matson about this case or about their potential involvement.

[5] *See https://www.cms.gov/medicare/health-safety-standards/enforcement/nursing-home-enforcement* accessed on March 6, 2026.

56. For example, on February 27, 2026, at 8:02 p.m., Ms. Matson received a voicemail from a prior co-worker who is still currently employed with Defendant. The voicemail stated,

> "(02/27/26, 8:02 PM) Hi Kathy. Please call me at your earliest convenience. I just spoke to Mister Greg Njak. He, uh, is aware that you have called staff. Um, he asked me, um, if I knew both sides of the story. I said no, um. And he, uh, he look, he's on the, he's on the phone again wanting to talk to me again, so please call me, honey. I don't know what's going on. They're not letting me work this weekend. I, I'm afraid they're firing me. I don't know what's going on, but anyway, um, I will let you know, OK, as soon as I find out, but please call me."

57. Defendant's actions are a clear attempt to retaliate against Plaintiff for making a report of suspected neglect in violation of O.R.C. § 3721.24(A).

58. Upon information and belief, as of the date of the filing of this Complaint, Defendant continues to retaliate against Plaintiff.

## V. COURT SUPERVISED NOTICE PURSUANT TO 29 USC § 216(b) ALLEGING FLSA VIOLATIONS

59. Named Plaintiffs re-allege, and incorporate by reference, the allegations set forth in the preceding paragraphs.

60. Named Plaintiffs request that the Court issue Court Supervised Notice to the following group of current and former employees defined as:

> **All current and former hourly employees who have been employed by Hopewell Grove Rehabilitation and Healthcare Center, LLC at any time within the period of three (3) years preceding the filing of Plaintiffs' Motion for Court Supervised Notice through the date of judgment who were subject to Defendant's auto-deducted meal break policy and received a shift differential or non-discretionary bonus during their employment. ("Employees Entitled to Notice")**

61. Named Plaintiffs reserve the right to amend and refine the definition of the Employees Entitled to Notice she seeks to have the Court serve notice based upon further investigation and discovery.

62. The precise size and identity of the proposed Employees Entitled to Notice should be ascertainable from the business records, tax records, and/or employee and personnel records of Defendant.

63. Court Supervised Notice pursuant to 29 U.S.C. § 216(b) to the Employees Entitled to Notice is appropriate because there exists at least a strong likelihood that they are similarly situated to the Named Plaintiffs.

64. Sending Court Supervised Notice pursuant to 29 U.S.C. § 216(b) to the Employees Entitled to Notice is appropriate because they have been subjected to single companywide policies and common business practices referenced in the paragraphs above, and the success of their claims depends upon the resolution of common issues of law and fact, including *inter alia*, whether Defendant satisfied the FLSA's requirements for paying them for all hours worked and whether Defendant used the proper regular rate for overtime purposes.

65. Named Plaintiffs and the Employees Entitled to Notice, having willfully been not paid their entitled compensation for work they performed pursuant to the common policies described herein, are "similarly situated" as that term is defined in 29 U.S.C. § 216(b) and the associated decisional law.

66. The Named Plaintiffs and the Employees Entitled to Notice have been similarly affected by the violations of Defendant in workweeks during the relevant time period, which amount to a single decision, policy, or plan to willfully avoid paying all earned FLSA compliant wages.

67. Named Plaintiffs seek to have the Court send supervised notice pursuant to 29 U.S.C. § 216(b), as defined above, to the proposed group of similarly situated current and former employees, i.e., Employees Entitled to Notice.

68. Named Plaintiffs are similarly situated to the Employees Entitled to Notice and will prosecute this action vigorously on their behalf.

69. Named Plaintiffs intend to send notice to all the Employees Entitled to Notice pursuant to Section 216(b) of the FLSA. The names and addresses of the Employees Entitled to Notice are available from Defendant's records. For the purpose of notice and other purposes related to this action, their names, addresses, email addresses, and phone numbers are readily available from Defendant. Notice can be provided by means permissible under the FLSA.

70. Named Plaintiffs and the Employees Entitled to Notice have been similarly damaged by Defendant's willful refusal minimum wages for all hours worked, including failing to pay 150% of Named Plaintiffs' and the Employees Entitled to Notice's regular rate for all hours worked beyond forty (40) in a workweek.

71. As a result of Defendant's FLSA violations, Named Plaintiffs and the Employees Entitled to Notice are entitled to damages, including, but not limited to, unpaid wages, liquidated damages, costs, and attorneys' fees.

72. Any alleged defenses Defendant may raise will be common to the Named Plaintiffs and the Employees Entitled to Notice.

## VI. <u>CAUSES OF ACTION</u>

### <u>COUNT I</u>
### VIOLATION OF THE FAIR LABOR STANDARDS ACT

73. Named Plaintiffs re-allege, and incorporate by reference, the allegations set forth in the preceding paragraphs.

74. During the time period from approximately three (3) years preceding the commencement of this action to the present, Defendant was an employer of Named Plaintiffs and Employees Entitled to Notice within the meaning of 29 U.S.C. § 203(d).

75. During the time period from approximately three (3) years preceding the commencement of this action to the present, Named Plaintiffs and the Employees Entitled to Notice were employed by Defendant within the meaning of 29 U.S.C. § 203(e)(1).

76. During the time period from approximately three (3) years preceding the commencement of this action to the present, Defendant employed Named Plaintiffs and the Employees Entitled to Notice within the meaning of 29 U.S.C. § 203(g).

77. During the time period from approximately three (3) years preceding the commencement of this action to the present, Defendant was an employer subject to the FLSA.

78. During all times material to this Complaint, Named Plaintiffs and the Employees Entitled to Notice have not been exempt from receiving overtime benefits under the FLSA because, *inter alia*, they were not "executive," "administrative," or "professional" employees, as those terms are defined under the FLSA. *See* 29 C.F.R. §§ 541.0, *et seq*.

79. At all times material to this Complaint, Defendant regularly employed Named Plaintiffs and the Employees Entitled to Notice to work more than forty (40) hours in a workweek.

80. Defendant violated federal law because they knew or should have known that the Named Plaintiffs and the Putative Plaintiffs auto-deducted meal break was interrupted, and they did not receive a bona fide lunch break.

81. Defendant violated federal law because it knew or should have known that non-discretionary bonuses and shift differentials should be included in the regular rate calculation for overtime compensation purposes.

82. Defendant, as described above, violated the FLSA, 29 U.S.C. § 207, by failing to pay Named Plaintiffs and the Employees Entitled to Notice at the appropriate overtime rate for all hours worked in excess of forty (40) per workweek.

83. Named Plaintiffs and the Employees Entitled to Notice should have been paid minimum wages for all hours worked and 150% of their regular rate for all hours worked beyond forty (40) in a workweek during the three years from the filing date of the Complaint or when they join this lawsuit.

84. Defendant willfully violated and continues to willfully violate the FLSA, by having engaged and continued to engage in conduct, which demonstrates a willful and/or reckless disregard for the provisions of the FLSA.

85. Named Plaintiffs and the Employees Entitled to Notice are entitled to unpaid overtime and other compensation, liquidated damages, interest and attorneys' fees, and all other remedies available as compensation for Defendant's violations of FLSA, by which the Named Plaintiffs and the Employees Entitled to Notice have suffered and continue to suffer damages.

**COUNT II**
**VIOLATION OF THE OHIO WAGE ACT**

86. Named Plaintiffs re-allege, and incorporate by reference, the allegations set forth in the preceding paragraphs.

87. The Ohio Wage Act provides that covered employees shall be compensated for every hour worked in one workweek. *See* O.R.C. §§ 4111, *et seq*.; *see also* 29 U.S.C. § 206(b).

88. The Ohio Wage Act provides that employees shall receive overtime compensation at a rate "not less than one and one-half times" the employee's regular rate of pay for all hours worked over forty (40) hours in one workweek, "in the manner and methods

provided in and subject to the exemptions of section 7 and section 13 of the Fair Labor Standards Act of 1937." *See* O.R.C. § 4111.03(A); 29 U.S.C. § 207(a)(1).

89. At all times material to this Complaint, Defendant was an employer covered by the Ohio Wage Act and has been thus required to comply with its mandates.

90. At all times material to this Complaint, Named Plaintiffs and the Employees Entitled to Notice who join this lawsuit from Ohio were covered "employees" of Defendant pursuant to the Ohio Wage Act and thus entitled to the Ohio Wage Act's protections.

91. At all times material to this Complaint, Defendant regularly employed Named Plaintiffs and the Employees Entitled to Notice who join this lawsuit from Ohio to work more than forty (40) hours in a workweek.

92. At all times material to this Complaint, Defendant violated the Ohio Wage Act by repeatedly failing to compensate Named Plaintiffs and Employees Entitled to Notice who join this lawsuit from Ohio for all hours worked at the appropriate pay rate, including Defendant's repeated action of refusing to compensate Named Plaintiffs and Employees Entitled to Notice who join this lawsuit from Ohio for all hours worked over forty (40) hours in a workweek at a rate not less than one and one-half times their regular rate.

93. Defendant violated the Ohio Wage Act because it knew or should have known that the Named Plaintiffs and the Employees Entitled to Notice who join this lawsuit from Ohio meal break was interrupted, requiring them to work during or through their unpaid thirty (30) minute meal break.

94. Defendant violated the Ohio Wage act because it knew or should have known that non-discretionary bonuses and shift differentials should be included in the regular rate calculation for overtime compensation purposes.

95. Indeed, at all times material to this Complaint, Named Plaintiffs and the Employees Entitled to Notice who join this lawsuit from Ohio did not receive one and one-half times their regular rate for all hours they worked in excess of forty (40) in a workweek.

96. Named Plaintiffs and the Employees Entitled to Notice who join this lawsuit from Ohio are not exempt from the wage protections of Ohio Law. During relevant times, Named Plaintiffs and the Employees Entitled to Notice who join this lawsuit from Ohio were not exempt from receiving overtime because they were not "executive," "administrative," "professional," "outside sales," or "computer" employees, as those terms are defined under the FLSA. *See* O.R.C. § 4111.03(A); *see also* C.F.R. §§ 541 *et seq*.

97. In violating the Ohio Wage Act, Defendant's acts and omissions have been of a willful, intentional, and bad faith nature or otherwise in reckless disregard of the Ohio Wage Act.

98. Named Plaintiffs and the Employees Entitled to Notice who join this lawsuit from Ohio are entitled to unpaid overtime and other compensation, interest and attorneys' fees, and all other remedies available as compensation for Defendant's violations of the Ohio Wage Act, by which the Named Plaintiffs and the Employees Entitled to Notice who join this lawsuit from Ohio have suffered and continue to suffer damages.

## COUNT III
## OHIO PROMPT PAY ACT- FAILURE TO PROMPTLY PAY WAGES

99. Named Plaintiffs re-allege, and incorporate by reference, the allegations set forth in the preceding paragraphs.

100. At all times relevant to this Complaint, Defendant was Named Plaintiffs' and the Employees' Entitled to Notice who join this lawsuit from Ohio' "employer" and was required to comply with the Ohio Prompt Pay Act's provisions. *See* R.C. § 4113.15.

101. The OPPA provides that employers shall pay covered employees all wages, including overtime, on or before the first day of each month for wages earned during the first half of the preceding month ending with the fifteenth day thereof, and, on or before the fifteenth day of each month, for wages earned during the preceding calendar month. *See* R.C. § 4113.15(A).

102. At all times material to this Complaint, Defendant has refused to pay Named Plaintiffs and the Employees Entitled to Notice who join this lawsuit from Ohio all owed overtime wages at one and one-half (1 ½) times their normal hourly rate and all wages at the statutorily mandate minimum wage rate, within thirty (30) days of performing the work. *See* R.C. § 4113.15(B).

103. Named Plaintiffs' and the Employees' Entitled to Notice who join this lawsuit from Ohio wages remain unpaid for more than thirty (30) days beyond their regularly scheduled payday.

104. Defendant's violations of the OPPA have been of a willful, intentional, or bad faith nature or have otherwise exhibited a reckless disregard of the OPPA's provisions.

**COUNT IV**
**VIOLATION OF O.R.C. § 2307.60 AND 29 U.S.C. § 216(a)**

105. Named Plaintiffs re-allege, and incorporate by reference, the allegations set forth in the preceding paragraphs.

106. The Fair Labor Standards Act, 29 U.S.C. § 216(a), imposes criminal penalties for willful violations of the FLSA.

107. By its acts and omissions described herein, Defendant has willfully violated the FLSA, and Named Plaintiffs and the Employees Entitled to Notice who join this lawsuit have been injured as a result.

108. O.R.C. § 2307.60 permits anyone injured in person or property by a criminal act to recover damages in a civil action, including exemplary and punitive damages.

109. As a result of Defendant's willful violations of the FLSA, Named Plaintiffs and the Employees Entitled to Notice who join this lawsuit are entitled to compensatory and punitive damages pursuantto O.R.C. § 2307.60.

**COUNT V**
**VIOLATION OF O.R.C. § 3721.24**
**WHISTLEBLOWER PROTECTION STATUTE**

110. Named Plaintiffs re-allege, and incorporate by reference, the allegations set forth in the preceding paragraph.

111. Named Plaintiff Matson brings this retaliation claim solely on her own behalf and not on behalf of the putative collective.

112. Under O.R.C. § 3721.24(A), "[n]o person … shall retaliate against an employee… who, in good faith, makes or causes to be made a report of suspected abuse, neglect, or exploitation of a resident.. [f]or purposes of this division, retaliatory actions include discharging, demoting, or transferring the employee… and any other action intended to retaliate against the employee."

113. As described above, Named Plaintiff Matson reported Mr. Grey for patient negligence prior to her termination and later reported additional safety violations to the Board of Health. Following these reports, Defendant terminated Named Plaintiff Matson and subsequently attempted to interfere with her rights under the FLSA and Ohio wage laws by discouraging and threatening other nurses from speaking with her or participating in this lawsuit.

114. Defendant's actions are a clear attempt to intimidate and retaliate against Named Plaintiff Matson for exercising her rights under Ohio state law.

115. Under O.R.C. § 3721.21(C), Named Plaintiff Matson is entitled to damages, including courts costs and reasonable attorney's fees.

## PRAYER FOR RELIEF

WHEREFORE, Named Plaintiffs, on behalf of themselves and the Putative Plaintiffs, pray that this Court enter the following relief:

A. For an Order sending Court Supervised Notice to the FLSA Employees Entitled to Notice as defined herein and requiring Defendant to provide the names, addresses, e-mail addresses, telephone numbers, and social security numbers of all putative collective action members;

B. In the event the Defendant seeks to have discovery on the issues of whether the FLSA Employees Entitled to Notice are similarly situated to the Named Plaintiff, that the Court issue an order tolling the FLSA statute of limitation for the FLSA Employees Entitled to Notice as of the filing of this Complaint.

C. Designating Named Plaintiff as representative for the FLSA Employees Entitled to Notice and designating counsel of record as Class Counsel;

D. Issuing proper notice to the FLSA Employees Entitled to Notice at Defendant's expense;

E. Unpaid wages, including overtime wages and an equal amount as liquidated damages pursuant to the FLSA and the supporting regulations for the Named Plaintiffs and the FLSA Employees Entitled to Notice;

F. A finding that Defendant has retaliated against Named Plaintiff Matson in violation of Ohio Whistleblower Law.

G. A declaratory judgment that the practice complained of herein is unlawful under the Ohio Wage Act and the OPPA;

H. Awarding Named Plaintiff and the Employees Entitled to Notice who join this lawsuit from Ohio the sum of 6% of the total unpaid wages or $200.00 for each instance of failure to pay wages owed within thirty days, whichever is greater, pursuant to the OPPA.

I. Compensatory and punitive damages under O.R.C. § 2307.60.

J. Awarding pre-judgment and post-judgment interest;

K. Any other relief to which the Named Plaintiff and Employees Entitled to Notice may be entitled.

Dated: March 18, 2026

Respectfully submitted,

*/s/Robert E. DeRose*
Robert E. DeRose (OH Bar No. 0055214)
Anna R. Doren (OH Bar No. 0104562)
**BARKAN MEIZLISH DEROSE COX, LLP**
4200 Regent Street, Suite 210
Columbus, OH 43219
Phone: (614) 221-4221
Facsimile: (614) 744-2300
Email: bderose@barkanmeizlish.com
adoren@barkanmeizlish.com

*Attorneys for Plaintiff*

**JURY DEMAND**

Plaintiff requests a trial by jury on all of her claims.

*/s/ Robert E. DeRose*
Robert E. DeRose